1

2

3

4

5

6                             UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
7                                       AT SEATTLE

8    BRYAN ELLIOTT MACAULEY,

9                             Plaintiff,            Case No. 2:13-CV-01405-JLR-BAT

10                    v.                            **REPORT AND
                                                   RECOMMENDATION**
11   CAROLYN W. COLVIN, Commissioner of
     Social Security,

12                             Defendant.

13

14          Bryan Elliott Macauley seeks review of the denial of his Supplemental Security Income

15   and Disability Insurance Benefits applications.  He contends the ALJ erred by (**1**) rejecting

16   treating and examining doctors' medical opinions; and (**2**) relying on incompetent vocational

17   expert ("VE") testimony at step five.  Dkt. 16.  As discussed below, the Court recommends the

18   Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

19                                       **BACKGROUND**

20          Mr. Macauley was born in 1970, has a tenth-grade education, and has worked as a

21   landscaper, machine operator, and press operator.  Tr. 200, 216, 220.  On November 30, 2009, he

22   protectively applied for benefits, alleging disability as of January 1, 2005.  Tr. 175–80.  His

23   applications were denied initially and on reconsideration.  Tr. 100–29.  The ALJ conducted a

REPORT AND RECOMMENDATION - 1

1   video hearing on October 26, 2011, finding Mr. Macauley not disabled.  Tr. 24–93.  As the

2   Appeals Council denied Mr. Macauley's request for review, the ALJ's decision is the

3   Commissioner's final decision.  Tr. 1–3.

4                                    **THE ALJ'S DECISION**

5       Utilizing the five-step disability evaluation process,[1] the ALJ found:

6       **Step one:**  Although Mr. Macauley had engaged in substantial gainful activity from his
        alleged onset date of January 1, 2005 through December 31, 2005, he had not engaged in
7       substantial gainful activity since January 1, 2006.

8       **Step two:**  Mr. Macauley had the following severe impairments: status post bilateral heel
        fractures, low back pain, anxiety, depression, and personality disorder.
9
        **Step three:**  These impairments did not meet or equal the requirements of a listed
10      impairment.[2]

11      **Residual Functional Capacity ("RFC"):**  Mr. Macauley had the residual functional
        capacity to sit for a total of 6 hours in an 8 hour workday, stand for a total of 2 hours in
12      an 8 hour workday, and lift and/or carry 10 pounds frequently and occasionally; he could
        perform simple repetitive tasks with minimal interaction with the public or coworkers,
13      accept instruction from supervisors, and follow a work routine.

14      **Step four:**  Mr. Macauley could not perform his past work.

15      **Step five:**  As there are jobs that exist in significant numbers in the national economy that
        Mr. Macauley can perform, he is not disabled.
16
    Tr. 24–39.
17
                                        **DISCUSSION**
18
19      Mr. Macauley challenges neither the ALJ's adverse assessment of credibility[3] nor the

20  ALJ's RFC assessment of his physical impairments.  Instead Mr. Macauley contends that the

21  ALJ harmfully erred by (**1**) disbelieving the severity of Mr. Macauley's mental-health

22  [1] 20 C.F.R. §§ 404.1520, 416.920.
    [2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
23  [3] Mr. Macauley does not challenge the ALJ's adverse credibility determination and has therefore
    waived the issue.  *See Bray v. Commissioner*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009).

REPORT AND RECOMMENDATION - 2

1  impairments as set forth by his treating, primary-care physician and examining psychologists;

2  and (**2**) posing an inadequate hypothetical to the VE that failed to account for the severity of his

3  mental-health impairments, particularly his limitations on concentration, pace, or persistence and

4  in the area of social functioning.

5       Although the medical evidence is susceptible to more than one rational interpretation, the

6  Court finds that the ALJ's decision was supported by substantial evidence, is free from harmful

7  legal error, and should be upheld.  *See Schneider v. Commissioner of SSA*, 223 F.3d 968, 973

8  (9th Cir. 2000).

9       **1.     ALJ's Evaluation of Medical Sources**

10      Mr. Macauley contends that the ALJ harmfully erred by denying the existence and

11  severity of Mr. Macauley's mental impairments, particularly the diagnoses of Attention Deficit

12  Hyperactivity Disorder ("ADHD") and personality disorder, as set forth in the opinions of **Dr.**

13  **John Hruby, M.D.** (treating, primary-care physician), **Dr. Kerry Bartlett, Ph.D.** (examining

14  psychologist), and **Dr. Evan Freedman, Ph.D.** (examining psychologist).  Dkt. 16, at 3.  Those

15  treating and examining medical opinions were contradicted by **Dr. Dan Donahue, Ph.D.**, a non-

16  examining psychologist.

17      The Court finds that the ALJ provided specific and legitimate reasons supported by

18  substantial evidence in the record for giving greater weight to Dr. Donahue's opinion of Mr.

19  Macauley's mental limitations than to the opinions of Drs. Hruby, Bartlett, and Freedman.  *See*

20  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  The ALJ's rational assessment of the impact

21  of Mr. Macauley's mental limitations, including his personality disorder (found at step two to be

22  a severe impairment), should not be disturbed.  Moreover, the Court finds that any alleged legal

23  error regarding the ALJ's failure to address ADHD as a severe impairment was harmless because

REPORT AND RECOMMENDATION - 3

the ALJ found other severe mental impairments and considered the impact of all limitations, severe or otherwise, on Mr. Macauley's concentration, persistence, or pace.

### a.    Dr. Hruby – Treating, Primary-Care Physician

Mr. Macauley argues that the ALJ improperly disregarded Dr. Hruby's opinion that he met Listing 12.08 (personality disorder), Listing 12.06 (anxiety related disorders), and 12.04 (depressive disorder) because (**1**) the medical record supports Dr. Hruby's conclusions even if Dr. Hruby's clinical findings were mild; (**2**) the ALJ failed to discuss or give reasons for disregarding Dr. Hruby's answers to written interrogatories; and (**3**) the ALJ rejected Mr. Macauley's *mental* limitations based on his ability to perform greater *physical* activities.  Dkt. 16, at 11–12.  The Court disagrees.

First, the ALJ cited two rational bases for giving little weight to Dr. Hruby's mental-health conclusions, either of which is sufficient.  Because Dr. Hruby quoted Dr. Freedman's mental-health conclusions verbatim, it was reasonable for the ALJ to discount Dr. Hruby's opinion for the same reasons she discounted Dr. Freedman's opinion.  Tr. 36.  Moreover, the ALJ noted that Dr. Hruby's conclusions were inconsistent with his own treatment notes, which regularly documented unremarkable clinical findings and appeared to focus primarily on medication management and counseling for Mr. Macauley's issues with raising his children.  Tr. 36–37.  Dr. Hruby consistently found that Mr. Macauley was alert and cooperative with normal mood and affect, normal attention span and concentration, and intact remote and recent memory.  Tr. 337, 340, 343, 346, 351, 357, 367, 375, 381, 387, 391, 396, 400, 430, 432, 441, 446, 455, 553, 569, 584.  Later records from Dr. Hruby indicated that Plaintiff was stable on his current medication. Tr. 429, 432, 552, 577.

Second, the ALJ's omission of a discussion of Dr. Hruby's answers to interrogatories is

1  at most a harmless error because Dr. Hruby's letter, written a day after answering the

2  interrogatories, describes the same limitations in greater narrative detail.  *See* Tr. 585–95, 598.

3  Dr. Hruby's answers to interrogatories demonstrated this: whenever the question asked for

4  narrative clarification, he wrote: "See attached letter."  Tr. 587, 590, 593, 594, 595.  The ALJ

5  thus adequately addressed the mental limitations specified in the interrogatories.

6        Third, Mr. Macauley inaccurately suggests that the ALJ rejected Dr. Hruby's opinion

7  regarding *mental* impairments by citing Mr. Macauley's ability to perform greater *physical*

8  activities.  The ALJ discounted Dr. Hruby's opinion as it pertained specifically to mental

9  impairments.  Tr. 36–37.

10        The ALJ gave specific  and legitimate reasons supported by substantial evidence for

11  discounting Dr. Hruby's evaluation of mental impairments, which endorsed Dr. Freedman's

12  conclusions without meaningfully explaining Dr. Hruby's own conflicting clinical observations.

13            **b.**    **Dr. Bartlett – Examining Psychologist**

14        Mr. Macauley contends that the ALJ harmfully erred by rejecting Dr. Bartlett's opinion

15  on the bases that (**1**) Dr. Bartlett himself questioned the accuracy of his evaluation due to Mr.

16  Macauley's inconsistent responses and underreporting of polysubstance abuse/dependence, and

17  (**2**) Dr. Bartlett assigned a Global Assessment of Functioning ("GAF") score of 50 that was

18  inconsistent with the record.  Dkt. 16, at 14.  According to Mr. Macauley, Dr. Bartlett's

19  conclusions should have been accepted *in toto* because he had already fully factored in Mr.

20  Macauley's inconsistent statements, his possibly intentional deception, and his personality

21  disorder in determining functional limitations.  *Id.*  The Court disagrees.

22        The ALJ was under no obligation to uncritically accept conclusions that Dr. Bartlett

23  himself expressed significant reservations about.  Dr. Bartlett repeatedly questioned the validity

REPORT AND RECOMMENDATION - 5

of his own assessment due to suspicions that Mr. Macauley was magnifying symptoms to bolster

his application for disability benefits.  Tr. 294–97.  Dr. Bartlett summarized why, aside from

diagnosing polysubstance abuse/dependence, he deferred all other Axis I diagnoses such as

mood, anxiety, and pain disorders, as well as ADHD and specific learning disorders:

> As noted above, I remain uncertain regarding the most appropriate
> diagnostic designations for Bryan, in part due to the
> inconsistencies in his cognitive screening performances, his vague
> and at times conflicting responses to many interview questions,
> and his MMPI-2 effort.  However, my index of suspicion is
> relatively high for the likelihood of an attempt to manipulate the
> outcome of the evaluation to support a case for Social Security
> Disability support; as well as for the possibility of a personality
> disorder with antisocial features.

Tr. 296–97.  Moreover, the ALJ discounted the GAF score of 50 because it was inconsistent with

the evidence, including the lack of consistent mental health treatment, generally mild clinical

findings, stabilization with medication, and Mr. Macauley's demonstrated ability to engage in

activities requiring greater mental function such as activities of daily living, social interaction in

private and in public, and caring for himself and his four children.  Tr. 33, 36.  The ALJ cited

numerous examples: in October 2009, Mr. Macauley reported being able to assist his children get

ready for the day, prepare morning meals, complete some chores, and engage in parental tasks

throughout the day, Tr. 313; in August 2010, he reported plans to visit the fair with his children

that week, Tr. 577; in October 2010, he reported that he grooms himself, cleans his house,

washes his clothes, shops with the help of his grandmother, watches television for 5 hours per

day, and attends AA meetings twice a week, Tr. 490; in November 2010, he was able to take his

medication, maintain his personal hygiene, get the kids off to school, watch television, do

housework, shop, and do yard work without difficulty, Tr. 514; in self-reports, he generally did

1  not indicate problems getting along with others or significant problems interacting with authority

2  figures, Tr. 192–99, 239–46.  *See* Tr. 27–28, 31–34.

3      The ALJ gave specific  and legitimate reasons supported by substantial evidence for

4  discounting the severity of the mental impairments assessed by Dr. Bartlett, and the ALJ's

5  evaluation is consistent both with Dr. Bartlett's concerns about the validity of his own evaluation

6  and with the record as a whole.

7          **c.      Dr. Freedman – Examining Psychologist**

8      Mr. Macauley contends that the ALJ failed to give legitimate reasons for rejecting Dr.

9  Freedman's opinion that Mr. Macauley suffered from severe functional limitations, cognitive

10  impairment, and limitations in attention and concentration.  Dkt. 16, at 6.  The Court disagrees.

11      In 2009, Dr. Freedman concluded as follow:

12          Mr. M[ac]auley currently meets criteria for disability in the
            category of Affective Disorders due to his depressive symptoms,
13          anxiety with panic, negative self concept, and poor social
            functioning.  Working relationships are likely to be strained,
14          despite the efforts of others to demonstrate support and assistance.

15          Mr. M[ac]auley's thought disturbance which includes confusion,
            obsessive thinking patterns, distractibility, and difficulties with
16          processing speed result in functional impairments in the area of
            concentration, attention, memory, organization, writing, and
17          learning.  These difficulties also establish disability in the category
            of Organic Mental Disorders.  Mr. M[ac]auley's prognosis  is
18          guarded given his lifelong substance dependence which was
            probably precipitated and exacerbated by his early trauma.
19
20  Tr. 320.  The ALJ discounted Dr. Freedman's opinion for five reasons.  Tr. 36.  **First**, the

21  opinion was inconsistent with the Mr. Macauley's cognitive testing results.  Thus, the ALJ found

22  that given Mr. Macauley's average Full Scale IQ and working memory index scores, the RFC

23  could accommodate his borderline Processing Speed Index score by limiting him to simple,

    repetitive tasks.  *Id.*  **Second**, the opinion was inconsistent with the medical evidence showing

generally mild clinical findings, stability with medication, and the ability to perform activities showing greater mental functioning.  *Id.*  **Third**, Dr. Freedman did not provide sufficient specificity as to which criteria for Listings 12.02 and 12.04 were met.  **Fourth**, his opinion was undermined by his reliance, in part, on Mr. Macauley's subjective complaints that were not credible.  *Id.*  **Fifth**, the opinion was undermined by drug-dependency and withdrawal being considered as part of Mr. Macauley's symptoms, as well as by the murkiness surrounding the true extent of Mr. Macauley's substance abuse due to his inconsistent reporting.  *Id.*

The ALJ may have overstated the **ground one** "inconsistency" between Dr. Freedman's opinion and the cognitive testing results.  A more accurate descriptor is that the ALJ had a rational basis for disagreeing with Dr. Freedman's conclusions about how to interpret  the cognitive test results in light of other medical evidence, such as Dr. Hruby's mild clinical findings and Dr. Bartlett's suggestions that the differing scores might indicate an attempt by Mr. Macauley to overstate his mental impairments.  The wording of the ALJ's **ground three** is also imprecise.  Lack of specificity was not the problem with Dr. Freedman's opinion that Mr. Macauley met Listings 12.02 and 12.04.  Rather, as the ALJ makes clear, Dr. Freedman's conclusory statements at odds with the medical and other evidence were the true deficiencies.

Even if grounds one and three were presumed to be invalid, the ALJ's reliance on those grounds was harmless error because she cited other specific and legitimate reasons to discount Dr. Freedman's opinion that were supported by substantial evidence: inconsistency with the medical and other evidence (**ground two**); reliance on Mr. Macauley's non-credible report of symptoms (**ground three**); and difficulty in disentangling Mr. Macauley's extensive and underreported substance abuse and dependency (**ground five**).  *See generally Carmickle v. Commissioner, SSA*, 533 F.3d 1155, 1162 (applying harmless error standard when two of ALJ's

1  several reasons supporting an adverse credibility finding were held invalid).  The ALJ did not, as

2  Mr. Macauley alleged, substitute her own judgment for that of an examining physician.  The ALJ

3  reconciled the existing medical and other evidence by rejecting Dr. Freedman's conclusions and

4  giving more weight to the conflicting opinion of non-examining psychologist Dr. Donahue.  *See*

5  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

6  **d.    Dr. Donahue – Non-examining Psychologist**

7  Mr. Macauley argues that the ALJ harmfully erred by giving too much weight to non-

8  examining psychologist Dr. Donahue's opinion.  Dkt. 16, at 17.  The Court disagrees.

9  The opinion of a non-examining doctor such as Dr. Donahue cannot by itself—that is,

10  "with nothing more"—constitute substantial evidence that justifies the rejection of the opinion of

11  a treating or an examining doctor.  *See Lester*, 81 F.3d at 831.   Here, however, the ALJ accorded

12  significant weight to Dr. Donahue's mental RFC assessment based on the medical and other

13  evidence:

14          I concur with Dr. Donahue's assessment that the claimant has
            adequate abilities in the areas of understanding and memory along
15          with ability [to] concentrate, persist, and pace were sufficiently
            adequate to not preclude him from working.  Despite some
16          difficulty in social areas, Dr. Donahue opined that the medical
            evidence did not suggest these difficulties precluded successful
17          work at a basic and moderately complex level.  Further, Dr.
            Donahue opined that the claimant retained the ability to adapt to
18          changes at work, be aware of normal hazards, and take precautions
            as adequate, which I find consistent with the record as a whole
19          including the mild clinical findings, stabilization with medication,
            and the claimant's demonstrated ability to engage in activities
20          showing greater mental functioning than alleged as discussed
            earlier.
21
    Tr. 36.
22
23          The Court finds that the ALJ rationally interpreted the medical and other evidence by

    giving significant weight to Dr. Donahue's medical opinion.

REPORT AND RECOMMENDATION - 9

### e.      ADHD and Personality Disorder

Mr. Macauley particularly contends that the ALJ mishandled the diagnoses of ADHD and personality disorder.  The Court finds that the ALJ's omission of ADHD as a severe impairment at step 2 and lack of discussion of ADHD were at most harmless errors remedied by the RFC assessment of the impact of his mental impairments on concentration, persistence, or pace.  The Court also finds that the ALJ, who found personality disorder to be a severe impairment, rationally interpreted the record in determining that the RFC accounted for the severity of Mr. Macauley's personality disorder.

### (1)      ADHD

At step 2, the ALJ found that Mr. Macauley met his burden of establishing severe impairments.  *See* 42 U.S.C. § 423(d)(2)(B).  Consequently, the ramification of any erroneous failure to include a discussion of ADHD manifested itself, if at all, in determining at step three that he did not meet a listing; in assessing the impact of mental limitations on his RFC with respect to concentration, persistence, or pace; and in posing a hypothetical to the VE that adequately captured restrictions related to concentration, persistence, or pace.  *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *see* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523.

Although Mr. Macauley correctly notes that the ALJ omitted an ADHD discussion, it is not clear that the impact of ADHD on his mental functioning merited one.  **Dr. Bartlett** stated that Mr. Macauley reported a history of diagnosis of and treatment for ADHD.  Tr. 292–93. Nonetheless, Dr. Bartlett deferred making a diagnosis of ADHD due to his concerns about Mr. Bartlett's reliability, possible attempt to do poorly on cognitive tests in order to qualify for disability benefits, the influence of a personality disorder, and a history of substance abuse.  Tr.

293–97.  In contrast, although **Dr. Freedman** diagnosed ADHD by referring to the medical

history, he erroneously reported that Dr. Bartlett made a diagnosis of ADHD.  Tr. 312, 319.  Dr.

Freedman himself observed that "Mr. M[ac]auley's ability to attend and to concentrate during

the testing was sufficient to complete the intellectual testing."  Tr. 314.  The one physician to

diagnose and treat Mr. Macauley's ADHD with medication in 2010 was primary care physician

**Dr. Hruby**.  *See, e.g.*, Tr. 438, 444, 446, 453.  Notably, however, in his October 2011 letter in

support of the disability applications, Dr. Hruby stated that he had been treating Mr. Macauley

for six medical problems, *none of which were ADHD*.[4]  Tr. 597.  Dr. Hruby's omission of ADHD

as a medical condition does not appear to be incidental.  Dr. Hruby left ADHD off of a June 30,

2010 letter in support of benefits, Tr. 423, and in other treatment notes from the same time

period, Tr. 429–36.

An ALJ need not discuss all the evidence presented; rather an ALJ must explain only

why "significant probative evidence has been rejected."  *Vincent ex rel. Vincent v. Heckler*, 739

F.2d 1393, 1394–95 (9th Cir. 1984) (citation and internal quotation marks omitted).  Here the

ALJ reviewed the relevant medical opinions: the examining psychologist who expressed concern

over the validity of an ADHD diagnosis (**Dr. Bartlett**); the examining psychologist who

erroneously referred to Dr. Bartlett's diagnosis of ADHD (**Dr. Freedman**); and the treating

physician who diagnosed and medicated Mr. Macauley for ADHD but pointedly left ADHD off

the list of the conditions treated since 2009 (**Dr. Hruby**).  The medical record thus suggests

either that there was no significant, probative evidence of ADHD, or that the ALJ may have

---

[4] Dr. Hruby cites the following medical problems along with corresponding diagnostic codes: PTSD (ICD-309.81), dyspepsia (ICD-536.8), chronic pain due to trauma (ICD-338.21), narcotic abuse in remission (ICD-305.53), history of benzodiazepine addiction (ICD-304.10), other anxiety states (ICD-300.09), and inadequate material resources (ICD-V60.2).  Tr. 597.  There is no mention of ADHD, the diagnostic code of which would be ICD-314.00 or ICD-314.01.

REPORT AND RECOMMENDATION - 11

1  rationally determined that any symptoms of ADHD had been subsumed by Mr. Macauley's other

2  severe mental impairments, such as anxiety.

3      Regardless, the ALJ found other severe impairments and proceeded with the sequential

4  process in which he considered even the impact of non-severe impairments on concentration,

5  persistence, or pace.  *See* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523.  Any legal error in

6  declining to explicitly discuss ADHD was harmless at step 2 and at all subsequent steps in the

7  sequential process.

8              **(2)      Personality Disorder**

9      Mr. Macauley argues that the ALJ mishandled medical evidence of a personality disorder

10 by failing to give it more substantial weight. Dkt. 16, at 16.  The ALJ found Mr. Macauley's

11 personality disorder to be a severe impairment at step two, discounted the severity of condition

12 based on the medical and other evidence (including medical notes about his cooperative

13 behavior, daily activities, and self-reporting of relationships), and then accounted for it in the

14 RFC restriction to "minimal interaction with the public or coworkers."  Tr. 27–29, 31–37.  This

15 was a rational interpretation of the record supported by substantial evidence.

16          **2.      Adequacy of the Hypotheticals Posed to the VE**

17     In his opening brief, Mr. Macauley argues that the hypotheticals posed to the VE were

18 inadequate because the ALJ assessed only moderate deficiencies in concentration, persistence, or

19 pace and in the area of social interaction while the restrictions were actually marked.  Dkt. 16, at

20 17–20.  In his reply brief, Mr. Macauley modifies his argument by contending that the

21 hypotheticals posed to the VE were inadequate because the RFC limitation to simple repetitive

22 tasks did not account even for moderate deficiencies in concentration, persistence, or pace.  Dkt.

23 18, at 3–6.  The Court disagrees with both iterations of Mr. Macauley's arguments because the

REPORT AND RECOMMENDATION - 12

1 RFC, the ALJ, and the VE all accounted for moderate deficiencies in concentration, persistence,

2 or pace and in the area of social functioning.

3       Mr. Macauley's contention in the opening brief—that the ALJ should have posed a

4 hypothetical to the VE involving marked deficiencies in concentration, persistence, or pace and

5 more severe restrictions in the area of social functioning—reargues the ALJ's evaluation of the

6 medical evidence.  The contention should be rejected for the same reasons discussed earlier.

7       Mr. Macauley's argument in the reply brief—that the ALJ's hypothetical to the VE was

8 incomplete because it did not account for moderate deficiencies in concentration, persistence or

9 pace—is also incorrect.  The ALJ posed **three hypotheticals** to the VE, and each succeeding

10 hypothetical accounted for more significant functional restrictions.  In the first one, she noted

11 that "[t]he non-exertional limitations or restrictions are that this individual has the ability to

12 understand, remember, sustain concentration, and persistence, and pace, for simple, repetitive

13 tasks."  Tr. 83.  In the second hypothetical, the ALJ once again repeated that "his concentration,

14 persistence, and pace would be limited, again, to performance of simple, repetitive tasks."  Tr.

15 84.  In the final hypothetical—the one the ALJ ultimately employed in the RFC—the ALJ did

16 not explicitly repeat the clause about concentration, persistence, or pace, but referred to

17 sedentary, unskilled work in which a worker "could perform simple, repetitive tasks."  Tr. 86.

18       The record shows not only that the third hypothetical's limitation to simple, repetitive

19 tasks encompassed moderate restrictions on concentration, persistence, or pace, but also that the

20 VE actually understood the hypothetical to include moderate restrictions on concentration,

21 persistence, or pace.  After the VE opined that there were jobs that a person subject to the third

22 hypothetical could perform, plaintiff's counsel asked what would happen to the various

23 hypotheticals if "marked" deficiencies in concentration, persistence, or pace were added.  Tr. 91.

REPORT AND RECOMMENDATION - 13

The VE answered: "Moderate, you know, is much more questionable than marked.  Moderate, in our system, you know, has been described as being limited but not precluded; whereas, marked is very significant, so – and I think, in most cases, marked would – in these areas . . . would result in the person not being able to make the production quotas that the employer would require."  Tr. 92.

Unlike the line of cases on which Mr. Macauley relies—e.g., *Brink v. Commissioner of SSA*, 2009 WL 2512514 (9th Cir. Aug. 18, 2009); *Bentancourt v. Astrue*, 2010 WL 4916604 (C.D. Cal. Nov. 27, 2010)—the ALJ here found moderate deficiencies in concentration, persistence, or pace, that were supported by Dr. Donahue's medical opinion, Tr. 28, 35–36; the ALJ explicitly noted that those difficulties were accounted for in the RFC by limiting him to simple, repetitive tasks, Tr. 36; and the ALJ referred to difficulties in concentration, persistence, or pace that the parties and the VE understood to be encompassed by the given hypotheticals, Tr. 83, 84, 86, 91–92.  The Court thus finds that the ALJ did not err by posing hypotheticals to the VE that relied upon an RFC assessment that, consistent with the medical record, accounted for moderate deficiencies in concentration, persistence, or pace through the limitation to simple repetitive tasks.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that RFC of "simple, routine, repetitive" work is consistent with doctor's opinion that claimant could carry out "very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision"); *Vanblaricum v. Colvin*, 2014 WL 991834 (D. Or. Mar. 13, 2014) (finding that ALJ's functional restriction to simple, routine tasks captured moderate deficiencies in concentration, persistence or pace because the record showed that ALJ relied upon non-examining psychologist's opinion of moderate restrictions on the ability to maintain attention and concentration for extended periods).

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and recommends the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **June 25, 2014.**  If no objections are filed, the matter will be ready for the Court's consideration on **June 27, 2014**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses

DATED this 11th day of June, 2014.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15